**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CALIFORNIA TITLE INSURANCE ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

No. C 08-01341 JSW

**ORDER ON MOTIONS TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

/

**INTRODUCTION**

Now before the Court for consideration are the Joint Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (the "Joint Motion") and the Motion to Dismiss Consolidated Second Amended Class Action Complaint filed by Old Republic International Corporation ("ORI").

The Joint Motion is filed on behalf of the following groups of defendants:

(1) the Fidelity Defendants, which consist of Fidelity National Financial, Inc. ("Fidelity National"), Fidelity National Title Insurance Company ("Fidelity Title"), Ticor Title Insurance Company ("Ticor"), Ticor Title Insurance Company of Florida ("Ticor Florida"), Chicago Title Insurance Company ("Chicago Title"); Security Union Title Insurance Company ("Security Union"), and National Title Insurance of New York, Inc. ("National Title");

(2) the First American Defendants, which consist of First American Corporation ("First American Corp."), First American Title Insurance Company ("First American Title"), and United General Title Insurance Company ("United General");

(3) the Land America Defendants, which consist of Commonwealth Land Title Insurance Company ("Commonwealth"), Lawyers Title Insurance Corporation ("Lawyers Title"), and Transnation Title Insurance Company ("Transnation");

(4) the Stewart Defendants, which consist of Stewart Title Guaranty Company ("Stewart Guaranty"), and Stewart Title Insurance Company ("Stewart Title"); and

(5) the Old Republic Defendants, which consist of ORI and Old Republic National Title Insurance Company ("Old Republic").

Having considered the parties' papers, relevant legal authority, and the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART Defendants' Joint Motion, and GRANTS ORI's motion.[1]

**BACKGROUND**

On March 11, 2008, Plaintiff Lynn Bartron filed suit against the Defendants. Thereafter, the Judicial Panel on Multidistrict Litigation ("JPML") denied a motion to transfer similar suits that were pending throughout the country. Accordingly, this Court related and consolidated a number of cases filed throughout California.

On May 21, 2009, the Court granted Defendants' motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint and granted Plaintiffs leave to amend (the "May 21 Order"). On July 6, 2009, Plaintiffs filed the Consolidated Second Amended Class Action Complaint ("SACC") on behalf of themselves and the following class: "All persons who purchased title insurance relating to the purchase or refinance of a residential property located in California directly from the defendants, their subsidiaries, agents and/or affiliates, from no later than March 10, 2004, through December 31, 2007 (the "Class Period")." (SACC ¶¶ 1, 74.)

In the May 21 Order, the Court set forth in detail the factual allegations underlying Plaintiffs' claims. In brief, Plaintiffs allege that Defendants, groups of title insurance companies, have conspired to fix title insurance prices in New York, Pennsylvania, Ohio, and New Jersey through their participation in rate-setting organizations in those states. (SACC

---

[1] Although ORI filed a separate motion to dismiss, the Court's analysis herein applies equally to ORI.

2

¶¶ 110-138.) As a result of the agreements to fix prices in these states, Defendants "agreed, either expressly or tacitly, to not compete on rates in other states," including California, because "[t]o compete on rates in other states ... could and would imperil [Defendants'] ability to maintain the agreed rates they set, and the supra-competitive profits they enjoyed, both within and outside of New York, New Jersey, Pennsylvania, and Ohio." (*Id.* ¶ 139.) According to Plaintiffs, Defendants also maintain supra-competitive profits by including the costs of illegal kickbacks and commissions in the cost of title insurance premiums. (*Id.* ¶¶ 99-101, 159-167.) Plaintiffs also support their allegations of a conspiracy by addressing certain features of the title insurance industry which they claim facilitate Defendants' ability to fix prices. (*Id.* ¶¶ 147-158.) Based on these allegations, Plaintiffs contend that "[D]efendants engaged in concerted efforts, either by explicit agreements, or implicitly by a pattern or course of conduct, to: (i) collectively set and charge supra competitive rates for title insurance; (ii) not compete with each other to sell and market title insurance based on price; (iii) include agency commission costs in their calculated rates; and (iv) embed within these improper commissions payoffs, kickbacks, and other charges that were unrelated to the issuance of title insurance," in violation of 15 U.S.C. § 1 (the "Sherman Act claim"), California Business and Professions Code §§ 16720 *et seq.* (the "Cartwright Act claim"), and California Business and Professions Code §§ 17200 *et seq.* (the "Unfair Competition claim"). (*Id.* ¶¶ 89, 255-280.)

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

*Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.    The Sherman Act and Cartwright Act Claims Are Dismissed, Without Leave to Amend.**

Pursuant to Section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is hereby declared to be illegal." 15 U.S.C. § 1. In order to state a claim under Section 1, Plaintiffs must allege: "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States...; and (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1047 (9th Cir. 2008) (citing *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989)). Plaintiffs' Cartwright Act claim is based on the same allegations as the Sherman Act claim, and "analysis under California's antitrust law mirrors the analysis under federal law[.]" *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("[A]nalysis under California's antitrust law mirrors the

4

analysis under federal law[.]"); *see also In re Late Fee and Over Limit Fee Litigation*, 528 F. Supp. 2d 953, 965 (N.D. Cal. 2007) (hereinafter "*In re Late Fee*").

In its May 21 Order, the Court concluded that Plaintiffs' allegations regarding Defendants' participation in various rate setting organizations, their motive to conspire, and the characteristics of the title insurance market were insufficient to state a claim that Defendants conspired to fix prices in California. Defendants again contend that Plaintiffs have failed to meet their burden under *Twombly* to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Court agrees.

In *Twombly*, the Supreme Court held that:

> stating [a Section 1] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. ... It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, *they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.*

*Twombly*, 550 U.S. at 556-57 (emphasis added); *see also Kendall*, 518 F.3d at 1047 ("claimants must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true," will prove the elements of a Section 1 claim).

In order to support their claims that the Defendants agreed to fix prices within California, Plaintiffs have added allegations regarding Defendants' participation in the California Land Title Association ("CTLA") and the American Land Title Association ("ALTA"). (SACC ¶¶ 140-146.) The CTLA, however, is not a rate setting organization and, as this Court previously noted, courts have concluded that participation in the same trade organizations is insufficient to establish a conspiracy. *See, e.g., In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 441 (S.D.N.Y. 2008); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219 (N.D. Ga. Jan. 28, 2009); *cf. In re Citric Acid Litig.*, 996 F. Supp. 951, 958-959 (N.D. Cal. 1998) (concluding on summary judgment that no inference of conspiracy could

be raised from participation at meetings between defendants), *aff'd*, 191 F.3d 1090, 1103 (9th Cir. 1999). Thus, participation in the CTLA may have provided Defendants the opportunity to discuss setting rates in California, but opportunity, without more, is not a plausible basis to suggest a conspiracy. *See, e.g., In re Late Fee*, 528 F. Supp. 2d at 963-64 (citing *Twombly*, 550 U.S. 567 n.12); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) ("*In re Graphics Processing I*").

Plaintiffs have added allegations about when the rate-setting organizations and CTLA held meetings and allegations about which of the Defendants' representatives may have attended those meetings. However, there still are no factual allegations about communications between the Defendants that could be construed as invitations to conspire or responsive actions by the other Defendants. Thus, the Court finds this case to be distinguishable from *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179 (N.D. Cal. 2009) (hereinafter "*In re TFT-LCD II*") and *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 901 (N.D. Cal. 2008) ("*In re SRAM*"). In those cases, the plaintiffs alleged facts regarding particular communications between the defendants, including public statements regarding pricing as well as allegations that the defendants communicated with one another about pricing by telephone calls, e-mails and instant messages. *See In re TFT-LCD II*, 599 F. Supp. 2d at 1184; *In re SRAM*, 580 F. Supp. 2d at 902. Similarly, there are no allegations that link the timing of the rate-setting organization and CTLA meetings to the release of information regarding the prices at which title insurance premiums were set in California.

Furthermore, the conspiracy is alleged to have begun in 2004, yet Plaintiffs allege facts suggesting that the cost of Defendants' title insurance premiums has remained stable since 1998, before the alleged conspiracy began. Thus, there are no factual allegations suggestion a unusual or unprecedented change in behavior changed following the agreement to enter into the conspiracy. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litigation*, 586 F. Supp. 2d 1109, 1115-16 (N.D. Cal. 2008); *In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1094-95 (N.D. Cal. 2007).

In addition to the new allegations regarding Defendants' participation in CLTA and ALTA, Plaintiffs once again rely on "plus factors" to support their claim of a conspiracy, *e.g.,* that the title insurance market is highly concentrated and that Defendants' prices have remained stable although costs have declined and title insurance policies are homogenous. However, "parallel behavior in a concentrated market is insufficient to suggest a conspiracy because it is a 'common reaction of firms in a concentrated market' to 'recogniz[e] their shared economic interests' and to reach similar 'price and output decisions' independently." *In re Late Fee*, 528 F. Supp. 2d at 964 (quoting *Twombly*, 550 U.S. at 553-54) (brackets as in *Twombly*); *see also id.* (noting that if defendants costs are similar, that fact could "explain why the defendants' prices would naturally be similar without the need for any agreement); *In re Graphics Processing I*, 527 F. Supp. 2d at 1022 ("competitive market forces will tend to drive the prices of like goods to the same level, so like prices on like products are not, standing alone, sufficient to implicate price fixing.").

Further, although Plaintiffs include allegations regarding violations found by the Department of Housing and Urban Development ("HUD"), the California Department of Insurance, and other states, those allegations relate primarily to the use of kickbacks and commissions, rather than alleged antitrust violations. (*See* SACC ¶¶ 170-218.) Thus, once again there are no allegations that Defendants have admitted to conspiring in one market, which might allow the Court to infer a conspiracy in another market. *See, e.g., In re SRAM*, 580 F. Supp. 2d at 903 (noting that allegations that the same actors were involved in a conspiracy in DRAM market and had entered guilty pleas in connection with that conspiracy, with other allegations, supported inference of conspiracy in SRAM market).

For all of these reasons, and looking at the allegations as a whole, the Court concludes that the allegations regarding the rate setting organizations, the CTLA, and the ATLA, taken together with the "plus factors" identified by Plaintiffs do not "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Rather, an equally plausible inference is that the Defendants engaged in conscious parallelism, which is not in itself unlawful. *Twombly*, 550 U.S. at 566; *In re Graphics Processing I*, 527 F. Supp. 2d at 1023 n.6.

Therefore, the Court concludes Plaintiffs have failed to allege facts sufficient to state their Sherman Act and Cartwright Act claims.

At the hearing on these motions, the Court gave Plaintiffs the opportunity to set forth what additional facts, if any, they would seek to include in an amended complaint. Plaintiffs did not provide the Court with any specifics and, as such, the Court concludes that giving Plaintiffs leave to amend would be futile.[2]

**C.    The Section 17200 Claim Is Dismissed, In Part.**

Pursuant Section 17200, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006); *see also Albillo v. Intermodal Container Services, Inc.*, 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)"). Defendants jointly move to dismiss the Section 17200 Claim on the basis that: (1) Plaintiffs lack standing to pursue this claim against Defendants from whom they did not purchase title insurance; (2) Plaintiffs have not alleged facts sufficient to state a claim under Section 17200; and (3) California Insurance Code § 12414.26 bars the Section 17200 Claim.

### 1.    Plaintiffs Have Established That They Have Standing Against the Title Insurers from Whom They Purchased Insurance.

Proposition 64, which was approved by California voters on November 2, 2004, amended Section 17200 to limit the standing of private plaintiffs to those persons who "suffered injury in fact and ha[ve] lost money as a result of such unfair competition." *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005) (quoting Cal. Bus. & Prof. Code § 17204). Thus, to establish standing under Section 17200, Plaintiffs must be able to show that Defendants caused them injury. *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008).

---

[2] Because the Court has concluded that Plaintiffs have not alleged sufficient facts to support allegations of a conspiracy, the Court has not reached the parent corporations' separate argument that there are insufficient facts alleged to hold them liable under the Sherman Act or the Cartwright Act either directly or on Plaintiffs' alternative theories of agency or alter-ego liability. The Court does address that argument in the context of the Section 17200 Claim.

8

At the hearing on these motions, Plaintiffs conceded, with one caveat, that if the Court concluded they had not alleged sufficient facts to state a claim demonstrating a conspiracy that they would have standing to pursue the Section 17200 Claim only against those defendants from whom they purchased title insurance. According to the SACC, the named Plaintiffs purchased title insurance from Fidelity Title, Commonwealth, Old Republic, First American Title, and Chicago Title. Thus, to the extent Plaintiffs have set forth sufficient facts to state a claim under Section 17200, Plaintiffs do have standing to pursue their Section 17200 claims against these Defendants.[3] Because none of the Plaintiffs allege that they purchased title insurance from Ticor, Ticor Florida, Security Union, National Title, United General, Lawyers Title, Transnation, Stewart Guaranty, or Stewart Title, Plaintiffs do not have standing to pursue Section 17200 claims against these Defendants, and the Section 17200 Claim is DISMISSED as to these Defendants.

At the hearing, Plaintiffs asserted that they could amend their claims to include persons who purchased title insurance from Ticor, Ticor Florida, Security Union, National Title, United General, Lawyers Title, Transnation, Stewart Guaranty, or Stewart Title. Accordingly, if Plaintiffs choose to pursue this action and wish to name additional Plaintiffs, they are given leave to file an amended complaint to do so.

Plaintiffs' caveat to their concession on standing is that they can pursue claims against Fidelity National, ORI and First American. In support of this argument, Plaintiffs rely on *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009), in which the court concluded a parent corporation could be liable for restitution under Section 17200 on a theory that it received a benefit from the plaintiffs. Specifically, Plaintiffs rely on the *Troyk* court's statement that to the extent the parent's subsidiary earned profits from the alleged unlawful payments, the parent's "net worth increased and the value of [its] stock investment in [the subsidiary] likewise increased, thereby benefitting" the parent. *Id.* at 1340. However, the court's decision did not

---

[3] Defendants argue that Plaintiffs have not alleged facts establishing that the Defendants caused their injuries and, thus, cannot meet the standing requirements of Section 17200. The Court addresses, and rejects, this argument in its discussion of the merits of Plaintiffs' Section 17200 Claim.

9

rest solely on that fact, which would be true of any parent-subsidiary relationship. Rather, the *Troyk* court also relied on the fact that the facts demonstrated that "a substantial portion of the service charges paid to [the subsidiary] were indirectly received" by the parent, because the subsidiary used the parent's personnel and equipment to perform its functions and paid the parent for those services. *Id.* Finally, the court also concluded that there was sufficient evidence to establish that the parent and the subsidiary acted as alter-egos or agents of one another, thus further justifying the award of restitution. *Id.* at 1340-41.

Plaintiffs allege that Fidelity National and Fidelity Title and First American and First American Title share common corporate headquarters but do not make the same allegations as to ORI and Old Republic. (*See* SACC ¶¶ 30-31, 41-42, 61-62.) Plaintiffs also allege that Fidelity National and Fidelity Title have overlapping officers and on this basis allege that Fidelity National is responsible for the daily operations of its title insurance subsidiaries. (*Id.* ¶ 68.) With the exception of Plaintiffs' allegation that a report prepared for the California Department of Insurance stated that "title insurance companies within an insurance group are under common management and do not represent independent decision centers," there are no other factual allegations regarding the parent corporations exercise of control over their subsidiaries. The Court finds that the facts alleged, without more, are insufficient to establish that an agency or alter-ego relationship exists between the parent corporations and their subsidiaries because Plaintiffs have not alleged facts sufficient to establish that the parent corporations are exerting the requisite amount of control over their subsidiaries. *See, e.g., Troyk*, 171 Cal. App. 4th at 1341-42 (factors to consider to determine if alter-ego relationship exists include commingling of funds and assets, identical equitable ownership, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell as a conduit for the affairs of the other); *Palomares v. Bear Stearns Residential Mortgage Corp.*, 2008 WL 686683 at *5 (S.D. Cal. Mar. 13, 2008) (granting motion to dismiss where plaintiff failed to allege facts demonstrating requisite control over agent by principal).

Accordingly, the claims against Fidelity National, First American, and ORI also are dismissed. This ruling, however, is without prejudice. At the hearing Plaintiffs asserted that they could allege additional facts to establish that the parent corporations could be held liable on these theories of liability. Accordingly, if Plaintiffs can allege such facts in good faith, they are granted leave to amend. If they cannot allege such facts at this time but later discover facts tending to show that the parent corporations are liable, they may move to file an amended complaint to reassert claims against these Defendants.

### 2. Plaintiffs Have Alleged Facts Sufficient to State a Section 17200 Claim.

Plaintiffs' Section 17200 claim is based, in part, on the alleged price fixing conspiracy. (SACC ¶¶ 272, 276.a, 276.d.) For the reasons set forth above, Plaintiffs have failed to state a Section 17200 claim based on those facts. *See In re Late Fee*, 528 F. Supp. 2d at 965; *Apple Inc. v. Pystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008) (citing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)).

Plaintiffs also premise the Section 17200 claim on the allegedly illegal rebates, kickbacks and commissions, and they allege this conduct allowed the Defendants to charge them more for title insurance than they would absent the alleged rebates, kickbacks and commissions. (Am. Compl. ¶ 276.d.) Plaintiffs also allege that this conduct violated, *inter alia*, California Insurance Code § 12404, which provides that "[i]t is unlawful for any title insurer ... to pay, directly or indirectly, any commission, compensation, or other consideration to any person as an inducement for the placement or referral of title business. Actual placement or referral of title business is not a precondition to a violation of this section, whether the violation is or is not a per se violation pursuant to subdivision (c)."

Plaintiffs allege that Defendants have paid such commissions, compensation, or consideration for the placement or referral of title business. (SACC ¶¶ 159-167.) Thus, Plaintiffs have alleged facts demonstrating unlawful conduct, and the Court need not determine whether Plaintiffs also allege facts demonstrating that Defendants' conduct was unfair or fraudulent or whether it violates the other laws identified in the SACC.

Defendants also argue that Plaintiffs have failed to allege facts demonstrating the alleged kickbacks caused them harm. The Court disagrees. Plaintiffs set forth the facts regarding the alleged kickbacks and commissions and contend that the Defendants improperly included the costs of kickbacks into the title insurance premium rates, thereby inflating those rates. Plaintiffs further allege that but for the improper kickbacks they would have paid less for title insurance. Accordingly, Plaintiffs have set forth facts sufficient to state a Section 17200 claim on this basis. *See Somerville v. Stryker,* 2009 WL 2901591 at *3 (N.D. Cal. Sept. 4, 2009); *see also Blaylock v. First American Title Ins. Co.*, 504 F. Supp. 2d 1091, 1105-06 (W.D. Wash. 2007).[4]

### 3. The Insurance Code Does Not Preclude the Remainder of the Section 17200 Claim.

Defendants also contend that Insurance Code § 12414.26 bars Plaintiffs' Section 17200 Claim. That section provides, in pertinent part, that "[n]o act done, action taken, or agreement made pursuant to the authority conferred by Article 5.5 ... or Article 5.7 ... of this chapter shall constitute a violation of ... any other law of this state...." Cal. Ins. Code § 12414.26. The California Supreme Court has concluded that, with the exception of rate setting, this provision of the Insurance Code does not displace claims under Section 17200. *Quelimane Company, Inc. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 33 (1998).

According to Defendants, Plaintiffs' Section 17200 Claim is barred because it pertains to rate setting. The Court disagrees. Rather, Plaintiffs are challenging Defendants' conduct regarding the illegal kickbacks and commissions, rather than the method by which rates are set or the amount of those rates. The Court finds guidance in *SCIF v. Superior Court*, 24 Cal. 4th 930 (2001), in which the California Supreme Court construed Insurance Code § 11758, a provision that is identical to section 12414.26. In that case, the plaintiff alleged that SCIF had misallocated and misreported information, which then allowed SCIF to collect inflated premiums from its insureds. The Supreme Court concluded that the plaintiff's allegations

---

[4] Defendants rely on a subsequent opinion in the *Blaylock* case in which the court granted summary judgment for lack of standing. In light of the procedural posture of this case, the Court finds that opinion inapposite.

12

related to SCIF's misconduct and did not "challenge the method by which the rate or premium charged was set," and, therefore, SCIF's conduct was not immunized by statute. The Court finds the facts in *SCIF* to be analogous to Plaintiffs' allegations in this case and concludes that, based on those factual allegations, Plaintiffs' Section 17200 claim, as it remains, is not barred by Insurance Code § 12414.26.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART. Plaintiffs' Sherman Act and Cartwright Act Claims are DISMISSED WITH PREJUDICE as to each of the named Defendants. Plaintiff's Section 17200 Claim is DISMISSED to the extent it relies on the alleged antitrust violations but remains pending as to Fidelity Title, Commonwealth, Old Republic, First American Title, and Chicago Title.

If Plaintiffs choose to file an amended complaint on the terms set forth in this Order, they must do so by no later than November 25, 2009.

**IT IS SO ORDERED.**

Dated: November 6, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE